FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 NOV 23 AM 10: 51

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

**ANGELICA GONZALEZ,**
Plaintiff,

v.

NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES;
AMANDA MATHIS, individually;
SONIA OLIVERIUS, individually;
CASEY SMITH, individually; and
JOHN/JANE DOE DHHS OFFICIALS, individually,
Defendants.

**Case No.** 7:26cv5023

**COMPLAINT FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS AND DISABILITY LAW**

**JURY TRIAL DEMANDED**

**REQUEST FOR TRIAL IN NORTH PLATTE, NEBRASKA**

## I. NATURE OF ACTION

1. This case concerns the use of a federally funded child-welfare system in a manner that Plaintiff alleges substituted disability-related assumptions for individualized evidence, progressively severed a mother from four of her children, separated those children from their younger sibling, and allowed the resulting separation to harden into a new status quo while meaningful review and reasonable modifications were delayed or denied.

2. Plaintiff Angelica Gonzalez is a United States Air Force veteran, a mother, a practicing mental-health therapist, and a crisis counselor. Her professional work requires her to assess risk, respond to suicidal and behavioral-health crises, support people experiencing trauma, and help families stabilize during some of the most difficult moments of their lives.

3. Plaintiff alleges that when the State was required to evaluate her own parenting, it did not consistently judge her by her actual functioning, her treatment history, her parenting history, the observations of professionals who knew her over time, or the availability of supports. Instead, trauma-related symptoms and disability-related characteristics were treated as evidence against her without the individualized disability analysis federal law requires.

4. This action is not an invitation for a federal judge to sit as a domestic-relations appellate court. Plaintiff does not ask this Court to decide which parent should presently have custody or simply vacate a state custody order because she disagrees with it.

5. Plaintiff instead seeks redress for independent violations of federal civil-rights law by Nebraska DHHS and executive officials who administered child-welfare services, visitation, family contact, disability accommodations, assessments, safety responses, reunification-related services, and case decisions under color of state law.

6. Plaintiff asks this Court to make federal civil-rights protections real: to declare unlawful conduct unlawful; to require disability-neutral, individualized treatment going forward; to prohibit retaliation; to order appropriate corrective measures; and to award all damages and other relief permitted by law for injuries already caused.

7. Plaintiff further seeks accountability because the consequences were borne not only by her. According to Plaintiff, her children lost regular contact with their mother, were separated from a younger sibling and maternal family, experienced disrupted communication, emotional distress, school difficulties, and repeated uncertainty while adults and institutions disputed responsibility around them.

## II. JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

9. Plaintiff brings claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, including 42 U.S.C. § 12132 and implementing regulations at 28 C.F.R. Part 35.

10. Plaintiff brings claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and HHS regulations including 45 C.F.R. § 84.60 governing children, parents, caregivers, foster parents, and prospective parents in the child-welfare system.

11. Plaintiff brings constitutional claims against appropriate individual state actors under 42 U.S.C. § 1983 for deprivations committed under color of state law.

12. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and prospective equitable relief authorized by federal law.

13. Venue is proper in the District of Nebraska because a substantial part of the acts and omissions giving rise to the claims occurred in Nebraska, including Scotts Bluff County, and the principal governmental defendant is an agency of the State of Nebraska.

## III. PARTIES AND CAPACITIES

14. Plaintiff Angelica Gonzalez is the mother whose parent-child relationships, participation in child-welfare services, visitation, and family contact were directly affected by the conduct alleged in this Complaint.

15. Plaintiff is a veteran of the United States Air Force. She has a documented trauma-related disability and a history of treatment. She alleges she is a qualified individual with a disability within the meaning of Title II and Section 504.

16. Plaintiff is also a mental-health therapist and crisis counselor. She alleges these facts are relevant to her actual functioning, her ability to understand and respond to behavioral-health risk, and the need for Defendants to evaluate her based on individualized evidence rather than stereotypes about mental-health disability.

17. Plaintiff brings this action solely in her individual and personal capacity. References to her service as a United States Air Force veteran and to her work as a mental-health therapist and crisis counselor are factual background relevant to her actual functioning, responsibilities, treatment of disability-related assumptions, and claimed injuries; they are not offered as an endorsement by any employer or professional organization. Plaintiff does not bring this action on behalf of, and does not purport to speak for, her current employer, any client, any behavioral-health program, or any public or private agency with which she works. This Complaint does not rely upon confidential client information obtained through Plaintiff's clinical work, and Plaintiff's professional role is separate from her status as a mother and individual asserting her own federal civil rights.

18. Defendant Nebraska Department of Health and Human Services (NDHHS) is a department or agency of the State of Nebraska and is a public entity within the meaning of Title II of the ADA.

19. NDHHS receives federal financial assistance and administers child-welfare programs and activities subject to Section 504 of the Rehabilitation Act.

20. Defendant Amanda Mathis acted under color of state law as a DHHS caseworker directly involved in Plaintiff's family case. Plaintiff seeks individual liability only for conduct Mathis personally undertook, directed, or materially caused outside protected judicial functions.

21. Defendant Sonia Oliverius acted under color of state law in a supervisory role associated with Plaintiff's case. Plaintiff seeks individual liability only for conduct Oliverius personally undertook, directed, authorized, ratified, or knowingly permitted, rather than solely because of supervisory status.

22. Defendant Casey Smith is included to the extent discovery establishes personal participation in, direction of, ratification of, or deliberate continuation of the specific conduct alleged herein. Plaintiff does not rely on respondeat superior liability under Section 1983.

23. John/Jane Doe Defendants are NDHHS officials whose identities are not yet known to Plaintiff but whose names and roles are expected to be established through records and discovery.

## IV. FEDERAL LAW GOVERNING THE CLAIMS

24. Title II provides that no qualified individual with a disability may, by reason of disability, be excluded from participation in, denied the benefits of, or subjected to discrimination by a public entity. 42 U.S.C. § 12132.

25. Section 504 prohibits disability discrimination in programs or activities receiving federal financial assistance. 29 U.S.C. § 794.

26. HHS's current Section 504 child-welfare regulation expressly prohibits federally funded child-welfare programs from making decisions based on speculation, stereotypes, or generalizations that a parent cannot safely care for a child because of disability. 45 C.F.R. § 84.60(a).

27. The same regulation expressly reaches decisions involving custody or control, parent-child visitation, family-preservation services, reunification services, parental-rights decisions, and participation in other child-welfare programs and activities. 45 C.F.R. § 84.60(b).

28. HHS regulations further require parenting evaluations to be individualized, based on the best available objective evidence, tailored to actual parenting ability and specific disability-related needs, and not reduced to a single measure of disability rather than parenting ability. 45 C.F.R. § 84.60(c).

29. Title II likewise requires reasonable modifications to policies, practices, and procedures when necessary to avoid disability discrimination unless the public entity can establish that the modification would fundamentally alter the nature of the program. See 28 C.F.R. § 35.130(b)(7).

30. These protections are directly implicated where a child-welfare agency uses a parent's trauma or mental-health history in decisions about visitation, reunification, family contact, evaluations, or access to services without assessing the parent's actual abilities and reasonable supports.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Parenting History and Efforts to Obtain Help

31. Before the events at issue, Plaintiff had substantial responsibility for the children's day-to-day care and for securing medical, dental, educational, behavioral-health, special-education, and other services.

32. Plaintiff alleges the case did not begin with a substantiated finding that she physically or sexually abused her children or intentionally deprived them of basic necessities.

33. Rather, the family faced school-attendance problems, behavioral-health needs, educational concerns, and service needs. Plaintiff sought assistance and participated in systems intended to help address those problems.

34. Plaintiff alleges that her efforts to obtain help were progressively reframed as evidence of parental deficiency rather than treated as evidence that she was attempting to secure services and stabilize the family.

**B. Removal of Four Children and Separation of Siblings**

35. On August 13, 2025, four of Plaintiff's children were removed from her physical care.

36. Plaintiff alleges the removal occurred without adequate notice and without a meaningful opportunity, before the family was separated, to confront the asserted factual basis for the degree of emergency intervention imposed.

37. Plaintiff further alleges that the record did not establish that she had physically abused the children or that she presented the type of immediate physical danger that justified treating permanent or near-permanent separation as the default response.

38. The four children were ultimately placed with their father in North Carolina, creating a geographic separation across multiple states between Plaintiff and the children.

39. The removal also separated those four children from their younger sibling, who remained with Plaintiff. Plaintiff alleges the siblings previously had frequent, including daily, contact and that this bond was severely disrupted after removal.

40. Plaintiff alleges that the children did not merely change residences. They lost ordinary access to their mother, younger sibling, maternal relatives, familiar supports, and the day-to-day continuity of relationships they had known.

**C. Safety and Mental-Health Concerns Reported After Placement**

41. Plaintiff alleges that during the period surrounding and following placement, one child communicated fear, distress, and suicidal thoughts to her.

42. Plaintiff reported those concerns to DHHS because, as a mother and a crisis counselor, she understood suicidal communication to require prompt and serious attention.

43. Plaintiff alleges that instead of preserving reliable access to a safe parent and ensuring transparent follow-up, agency-related decisions contributed to or tolerated restrictions on phone access and communication.

44. Plaintiff further alleges that the children later reported concerning treatment in the father's home, including allegations that Plaintiff believed required meaningful investigation and protective attention.

45. Plaintiff alleges that concerns raised about the children after placement were not met with the same urgency, skepticism, or intervention standard used against her before removal.

46. This alleged disparity is relevant to the manner in which NDHHS exercised its own child-welfare discretion, assessed risk, and administered services. Plaintiff does not ask this Court to decide custody merely because she disagreed with a state judge.

**D. Progressive Restriction of Mother-Child Contact**

47. After removal, Plaintiff's contact with her children became increasingly restricted.

48. Plaintiff alleges scheduled calls were missed, shortened, terminated, or rendered ineffective by late availability, device problems, lack of connectivity, supervision practices, or unilateral interruption.

49. Plaintiff further alleges that at times children were punished or discouraged for communicating with her and that calls were ended by the father despite the children's desire to maintain contact.

50. Plaintiff alleges that the children became increasingly isolated from substantial portions of their maternal family, not merely from Plaintiff.

51. According to Plaintiff, at least one child was denied requested contact with a gravely ill or dying maternal relative, further demonstrating how control over communication affected the children's family relationships.

52. Plaintiff alleges that the children's educational performance deteriorated after placement, including failing grades and continuing concerns involving educational supports and special-education needs.

53. Plaintiff alleges the children repeatedly had to tell or retell painful family events to professionals and became exhausted by having to explain the same experiences while meaningful parent-child contact remained limited.

54. The restriction of contact compounded the original removal. With each month that passed, ordinary parent-child interaction was replaced by controlled, inconsistent, or absent communication, increasing the risk that forced separation itself would be used to justify continued separation.

**E. Failure to Conduct a Disability-Compliant Individualized Assessment**

55. Plaintiff alleges that NDHHS knew she had a trauma-related disability and was engaged in treatment.

56. Plaintiff also had treating professionals familiar with her functioning over time.

57. Plaintiff alleges NDHHS failed to meaningfully evaluate whether the restrictions placed on her were actually necessary when considered against her real parenting abilities, treatment history, functioning, and information available from treating providers.

58. Plaintiff alleges that trauma-related guardedness, emotional responses, and mental-health history were interpreted adversely without sufficient distinction between symptoms of trauma and actual inability to parent safely.

59. Plaintiff was evaluated by Dr. Gage Stramensky in a parental-capacity evaluation. Plaintiff alleges aspects of that evaluation, including interpretations of guardedness and testing results, did not adequately account for trauma history, the circumstances of the evaluation, or longitudinal information from treating providers.

60. Plaintiff does not ask this Court to relitigate protected testimony by an evaluator. The relevance is that NDHHS allegedly relied on disability-related conclusions in administering its own programs without independently ensuring that its decisions satisfied federal requirements for individualized, objective assessment of actual parenting ability.

61. Reasonable alternatives were available for consideration, including graduated contact, structured video contact, neutral or trauma-informed supervision if supervision was truly necessary, family therapy, provider-supported contact, and written modification plans with objective criteria for reducing restrictions.

62. Plaintiff alleges NDHHS did not adequately engage in that reasonable-modification process and instead allowed highly restrictive contact to continue.

**F. October 28, 2026 HHS Office for Civil Rights Letter**

63. On January 6, 2026, the United States Department of Health and Human Services, Office for Civil Rights (HHS OCR), received Plaintiff's disability-discrimination complaint concerning NDHHS. The matter was assigned OCR Transaction No. 26-672232.

64. On October 28, 2026, HHS OCR issued a written response to Plaintiff. A copy should be attached as Exhibit 1.

65. OCR specifically described Plaintiff's allegation that NDHHS supported supervised visitation without assessing whether that restriction was necessary in light of her parenting abilities, treatment history, or input from treating providers.

66. OCR further described Plaintiff's allegation that NDHHS failed to consider reasonable modifications, including a visitation plan tailored to her needs or available support that could allow less restrictive contact with her children.

67. OCR stated that these allegations "could reflect noncompliance with Section 504 and Title II."

68. OCR explained that covered entities must make reasonable modifications unless the entity can demonstrate that the modification would fundamentally alter the nature of the program.

69. After reviewing the complaint, OCR determined to address the matter through technical assistance to NDHHS regarding the scope of its obligations under Section 504 and Title II.

70. OCR further advised that if it received a similar allegation of noncompliance against NDHHS in the future, it could initiate a formal investigation.

71. OCR closed that administrative complaint after providing technical assistance. Plaintiff does not falsely characterize the letter as a final adjudication that NDHHS violated federal law.

72. The letter is nevertheless significant: the federal agency charged with enforcing these disability protections recognized that the exact type of conduct Plaintiff had been challenging - restrictive visitation without adequate individualized assessment and failure to consider reasonable modifications - could implicate Section 504 and Title II.

**G. Scotts Bluff County Proceedings and Procedural Concerns**

73. The family's circumstances became the subject of juvenile and district-court proceedings in Scotts Bluff County, Nebraska.

74. Plaintiff alleges that the state proceedings included serious procedural difficulties, including insufficient notice at critical points, limitations on her ability to present and authenticate evidence, disputes concerning witness participation, and difficulty meaningfully litigating while self-represented.

75. Plaintiff alleges that conflicts arising from the earlier juvenile case made it difficult to obtain local counsel and that she was required to represent herself in proceedings involving the loss of contact with her children.

76. Plaintiff's trauma history made adversarial testimony and confrontation particularly difficult. She alleges that this disability-related reality was not adequately accommodated or understood and was at times treated as a credibility or demeanor problem rather than a need for fair access and trauma-informed process.

77. Plaintiff alleges that in at least one significant hearing she was not permitted the same practical access to electronics or litigation tools available to the opposing side, impairing her ability to organize and present digital evidence while appearing pro se.

78. A Bridge Order entered in December 2025 granted the father full custody and suspended Plaintiff's contact for a period of time. Plaintiff alleges that the order relied upon or was influenced by incomplete or outdated custody history, including a 2019 California order despite a later February 23, 2022 California order that had provided Plaintiff primary physical custody and joint legal custody.

79. Plaintiff has pursued state-court remedies challenging the Bridge Order, including motions filed in 2026. She alleges substantial delay in obtaining a meaningful hearing despite repeated efforts to secure review.

80. These state-court events are pleaded as factual background and as part of the resulting injury. Plaintiff does not seek damages against a judge for protected judicial acts in this Complaint and does not ask this Court to function as an appellate family court.

81. The federal question is whether executive actors and federally funded programs violated independent federal rights before, during, and after those proceedings, and whether prospective federal relief is necessary to prevent continuation of those violations.

**H. Newer Electronic-Evidence and Protection-Order Concerns**

82. Plaintiff also alleges that later protection-order proceedings involved disputed electronic evidence concerning an alleged August 5 communication that was attributed to a device, location, or source she contests.

83. Plaintiff maintains that objective evidence, including account-location information and travel evidence, places her in North Carolina at the relevant time and contradicts material aspects of the accusation.

84. Plaintiff also disputes claims concerning use of an old phone and maintains that the device described by others was not a functioning device available in the manner alleged.

85. Plaintiff preserves this evidence because it bears on credibility, procedural fairness, and the continuing accumulation of adverse allegations. She does not presently assert a federal fabrication-of-evidence claim against a private party without evidence that a state actor knowingly participated in fabricating, altering, or knowingly using false evidence.

86. If discovery establishes knowing participation by a state actor in fabrication or deliberate use of materially false evidence, Plaintiff reserves the right to seek leave to amend as permitted by the Federal Rules of Civil Procedure.

**I. Continuing Injury to Plaintiff and Her Children**

87. The harm alleged in this case is continuing and concrete. Plaintiff lost ordinary daily contact with four children and the ability to perform the ordinary functions of motherhood that had defined her family life.

88. The four removed children lost ordinary daily access to their mother and were separated from their younger sibling and substantial portions of their maternal family.

89. Plaintiff alleges that this separation affected the children emotionally and educationally and placed them in the position of navigating adult conflict, repeated interviews, restricted communication, and uncertainty about whether and when they could freely speak with their mother and maternal relatives.

90. Plaintiff alleges that a child's suicidal communication, reports of distress, school failures, disrupted family bonds, and repeated complaints about contact restrictions demonstrate that the consequences cannot be reduced to a dispute between two parents.

91. Plaintiff further alleges that the system's response caused her children to lose time with family that cannot be restored, including time with relatives who were ill or dying.

92. Plaintiff has suffered emotional distress, loss of companionship, litigation expenses, travel and administrative burdens, reputational harm, and impairment of her role in her children's medical, educational, and behavioral-health lives.

93. As a veteran, therapist, and crisis counselor, Plaintiff has spent years serving others and responding when people are in danger. She alleges that when she reported danger and asked the State to judge her by actual evidence, the system repeatedly treated her as the problem to be managed rather than a parent entitled to equal protection of federal disability law.

## VI. COUNT I - SECTION 504 CHILD-WELFARE DISCRIMINATION
### Against Nebraska DHHS

94. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

95. NDHHS receives federal financial assistance and is subject to Section 504, 29 U.S.C. § 794, and 45 C.F.R. Part 84.

96. Plaintiff is an otherwise qualified individual with a disability who was eligible to participate in NDHHS child-welfare programs and activities.

97. NDHHS was prohibited from making child-welfare decisions based on speculation, stereotypes, or generalizations that Plaintiff, because of disability, could not safely care for her children. 45 C.F.R. § 84.60(a).

98. NDHHS was required to ensure that parenting evaluations and disability-related assessments were individualized, based on objective evidence, tailored to actual parenting ability and specific disability-related needs, and not reduced to a measure of disability itself. 45 C.F.R. § 84.60(c).

99. Plaintiff alleges NDHHS failed to satisfy these requirements and instead allowed disability-related assumptions and interpretations to materially affect visitation, family contact, services, and case recommendations without an adequate individualized analysis of actual parenting ability and available supports.

100. Plaintiff further alleges NDHHS denied or failed to meaningfully provide reasonable modifications needed for equal participation in child-welfare services, including less restrictive and trauma-informed means of maintaining parent-child contact.

101. Plaintiff alleges disability was a substantial and legally impermissible reason for unequal treatment and denial of meaningful participation in federally funded child-welfare services.

102. As a direct and proximate result, Plaintiff suffered injuries for which Section 504 authorizes equitable and other relief permitted by law.

## VII. COUNT II - TITLE II OF THE AMERICANS WITH DISABILITIES ACT

### Against Nebraska DHHS

103. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

104. NDHHS is a public entity within the meaning of 42 U.S.C. § 12131.

105. Plaintiff is a qualified individual with a disability within the meaning of Title II.

106. Child-welfare assessment, family preservation, visitation, reunification-related services, case planning, safety planning, communication arrangements, and related services are programs, services, or activities of a public entity.

107. NDHHS knew of Plaintiff's disability and treatment history.

108. Plaintiff alleges NDHHS denied her equal and meaningful participation in those services by reason of disability, including through restrictive practices that were not supported by an adequate individualized assessment and by failing to make reasonable modifications necessary to avoid disability discrimination.

109. Plaintiff further alleges that reasonable alternatives existed and that NDHHS did not establish that the requested or available modifications would fundamentally alter its child-welfare program.

110. Plaintiff seeks declaratory, prospective, compensatory, and other relief available under Title II to the extent authorized by law and supported by proof.

## VIII. COUNT III - FOURTEENTH AMENDMENT: FAMILIAL INTEGRITY AND PROCEDURAL DUE PROCESS

### Under 42 U.S.C. § 1983 Against Appropriate Individual DHHS Defendants

111. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

112. The Constitution protects significant liberty interests in the care, custody, companionship, and management of one's children, while recognizing the State's legitimate and compelling interest in protecting children from actual danger.

113. Plaintiff does not claim that DHHS lacked authority to investigate legitimate safety concerns. She claims that executive officials imposed or continued extraordinary interference with family relationships without constitutionally sufficient individualized justification and process for the degree of deprivation imposed.

114. Plaintiff alleges that individual Defendants had access to evidence of her treatment participation, functioning, history as a primary caregiver, efforts to obtain services, and absence of substantiated allegations that she physically abused her children, yet personally imposed, recommended, authorized, or continued restrictions that went beyond what was reasonably necessary to address a demonstrated immediate threat.

115. Plaintiff alleges some decisions concerning communication, services, visitation administration, safety follow-up, and restrictions were executive decisions by DHHS personnel and were not mechanically compelled by a judicial order.

116. Plaintiff seeks individual liability only where discovery establishes each Defendant's personal participation, causation, and lack of applicable immunity.

117. The conduct caused loss of family association, denial of meaningful participation, emotional injury, and other damages recoverable under 42 U.S.C. § 1983.

## IX. COUNT IV - FIRST AMENDMENT RETALIATION

### Under 42 U.S.C. § 1983 Against Appropriate Individual DHHS Defendants

118. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

119. Plaintiff exercised protected rights by petitioning government entities, supervisors, oversight bodies, civil-rights agencies, and courts concerning the conduct of public officials and conditions affecting her children.

120. Her protected activity included disability-rights complaints and complaints to oversight entities regarding NDHHS and child-welfare conduct.

121. Plaintiff alleges relevant DHHS officials knew of at least some of these protected complaints and that her resort to complaints, oversight, and court remedies became a subject of agency concern or discussion.

122. To the extent discovery establishes that a Defendant caused an adverse executive action because Plaintiff complained, sought oversight, requested accommodation, or petitioned the courts, Plaintiff alleges retaliation in violation of the First Amendment.

123. Plaintiff seeks relief under this Count only against individuals for whom protected activity, knowledge, materially adverse action, causation, and personal responsibility can be established.

## X. COUNT V - DISABILITY-RIGHTS RETALIATION AND INTERFERENCE

### Against Nebraska DHHS and Appropriate Officials as Permitted by Law

124. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

125. Plaintiff engaged in protected activity by requesting disability-sensitive treatment, seeking reasonable modifications, objecting to disability discrimination, providing treatment information, and filing a complaint with HHS OCR.

126. Federal disability law prohibits retaliation, coercion, intimidation, threats, or interference because an individual exercised rights protected by the ADA or Section 504.

127. Plaintiff alleges adverse treatment continued after she asserted disability rights and pursued civil-rights review.

128. To the extent discovery establishes that any adverse action was motivated by Plaintiff's protected disability-rights activity, Plaintiff seeks all relief authorized by law for retaliation or interference.

## XI. BASIS FOR PROSPECTIVE AND CORRECTIVE RELIEF

129. Plaintiff alleges the challenged conduct created continuing consequences in current records, family-contact arrangements, agency narratives, and future child-welfare decision-making.

130. The October 28, 2026 HHS OCR letter confirms that the accommodation and individualized-assessment concerns raised by Plaintiff fall within the core obligations imposed by Section 504 and Title II, even though OCR did not enter a final liability determination in that administrative matter.

131. Prospective relief is necessary to prevent Plaintiff's disability, trauma history, or protected civil-rights activity from continuing to operate as an unexamined proxy for parental unfitness in future NDHHS decisions.

132. Plaintiff therefore seeks relief requiring NDHHS to make any future decision affecting her participation, visitation, family services, or communication through a documented, individualized, disability-neutral process that considers objective evidence and reasonable modifications.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and provide meaningful relief sufficient to remedy the federal violations proven, including:

A. Declare that NDHHS may not administer child-welfare, visitation, reunification, family-preservation, assessment, or family-contact programs in a manner that discriminates against Plaintiff by reason of disability or relies on disability stereotypes in place of individualized evidence;

B. Declare, if established after adjudication, that NDHHS violated Title II and/or Section 504 by failing to conduct a legally sufficient individualized assessment and by failing to consider or provide reasonable modifications necessary for equal participation;

C. Order appropriate prospective relief requiring NDHHS, in any continuing or future involvement with Plaintiff, to document an individualized assessment of actual parenting ability, specific safety concerns, objective evidence, treating-provider information, and reasonable modifications before imposing disability-related restrictions;

D. Order NDHHS to refrain from treating a diagnosis, trauma history, guarded presentation, emotional reaction, or disability-related symptom as a substitute for evidence that Plaintiff cannot safely parent;

E. Order NDHHS to meaningfully consider qualified treating-provider information and longitudinal evidence of functioning rather than relying exclusively on isolated evaluations or generalized assumptions;

F. Order NDHHS to provide a written reasonable-modification determination when disability-related requests affecting visitation, family contact, reunification-related services, or participation are denied or materially limited;

G. Require appropriate corrective measures for agency records shown to contain materially inaccurate disability-based characterizations or conclusions unsupported by individualized evidence, including correction, supplementation, or notation as permitted by law;

H. Require appropriate training, policy review, or compliance measures concerning 45 C.F.R. § 84.60, reasonable modifications, disability-neutral parenting evaluations, and retaliation protections where the evidence demonstrates systemic or continuing deficiencies;

I. Enjoin retaliation against Plaintiff for requesting accommodations, filing civil-rights complaints, contacting oversight agencies, or petitioning courts and government officials;

J. Award Plaintiff all compensatory damages legally recoverable under the applicable causes of action and supported by proof, including proven economic losses and other compensable injuries;

K. Award nominal damages under 42 U.S.C. § 1983 where a constitutional violation is proven even if a category of compensatory damages cannot be established;

L. Award punitive damages against individual Defendants only to the extent authorized by law and supported by evidence of the required culpable state of mind;

M. Award allowable costs and attorney's fees under applicable federal civil-rights statutes if Plaintiff obtains counsel or otherwise becomes legally entitled to such an award;

N. Permit appropriate discovery concerning DHHS case notes, supervisory communications, disability-accommodation decisions, assessment criteria, communications concerning Plaintiff's protected complaints, safety reports, family-contact restrictions, and the basis for recommendations made in Plaintiff's case;

O. Grant such additional equitable relief as is necessary to stop continuing federal violations and place Plaintiff, as nearly as the law permits, in the position she would have occupied absent unlawful discrimination and unconstitutional executive conduct, without requiring this Court to issue a child-custody decree; and

P. Grant all other relief the Court deems just, lawful, and necessary to right the federal civil-rights violations proven in this action.

**XIII. JURY DEMAND**

133. Plaintiff demands a trial by jury on all claims and issues for which a jury trial is available.

Respectfully submitted,

, MA, PLMHP, PLADC, PPC

**ANGELICA GONZALEZ**
Plaintiff, Pro Se

Mailing Address: 403 1st Ave

City/State/ZIP: Bayard, NE 69334

Telephone: 812-826-6262

Email: acgonzalez80@yahoo.com

Plaintiff, Pro Se
Mailing Address: 403 1st Ave
City/State/ZIP: Bayard, NE 69334
Telephone: 812-826-6262
Email: acgonzalez80@yahoo.com

# JS 44 (Rev. 03/24) CIVIL COVER SHEET

*Completed for filing in the United States District Court for the District of Nebraska*

**I. (a) PLAINTIFFS**
Angelica Gonzalez
**(b) County of Residence of First Listed Plaintiff**
Morrill County, Nebraska
**(c) Attorney / Pro Se Filer**
Angelica Gonzalez, Pro Se
403 1st Avenue, Bayard, NE 69334
Telephone: 812-826-6262
Email: acgonzalez80@yahoo.com

**DEFENDANTS**
Nebraska Department of Health and Human Services
Amanda Mathis
Sonia Oliverius
Casey Smith
John/Jane Doe DHHS Officials

**County of Residence of First Listed Defendant**
Not applicable (not a U.S. plaintiff case)
**Attorneys (if known)**
Unknown at filing

**II. BASIS OF JURISDICTION**
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity

**III. CITIZENSHIP OF PRINCIPAL PARTIES**
For diversity cases only.
Not completed because jurisdiction is based on a federal question.

**IV. NATURE OF SUIT (Place an X in one box only)**
CIVIL RIGHTS
☐ 440 Other Civil Rights ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/Accommodations
☐ 445 Americans with Disabilities - Employment ☒ 446 Americans with Disabilities - Other ☐ 448 Education
**Selected code: 446 - Americans with Disabilities - Other**

**V. ORIGIN**
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
U.S. Civil Statutes:
**42 U.S.C. § 12132; 29 U.S.C. § 794; 42 U.S.C. § 1983**
Brief description:
Disability discrimination and failure to provide reasonable modifications in child-welfare services; constitutional familial-integrity, procedural-due-process, and retaliation claims.

**VII. REQUESTED IN COMPLAINT**
Class action under Rule 23: ☐ Yes ☒ No
Demand: Declaratory and injunctive relief; compensatory, nominal, and punitive damages as permitted by law; amount to be determined.
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S), IF ANY**
Gonzalez v. Worden, et al.
Docket No. 8:25-cv-00466 (D. Neb.)
Judge: Joseph F. Bataillon
Prior case dismissed without prejudice in 2026.

**DATE**
November 11, 2026

**SIGNATURE OF FILER**
A. Gz [signature]
Angelica Gonzalez, Pro Se

RECEIVED
NOV 2 3 2026
CLERK
U.S. DISTRICT COURT

Angelica Gonzalez
403 1st Ave
Bayard, NE 69334

Retail

UNITED STATES POSTAL SERVICE

68102

RDC 99 0 Lb 4.00 Oz

U.S. POSTAGE PAID
FCM LG ENV
KIMBALL, NE 69145
NOV 18, 2026

$2.56

R2304W119897-04

RECEIVED
NOV 23 2026
CLERK
U.S. DISTRICT COURT

Clerk of Court
United States District Court
District of Nebraska
Roman L. Hruska Federal Courthouse
111. South 18th Plaza
Suite 1152
Omaha NE 68102


New civil case - PRO-SE